**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

EDNA R. DUTTON, Individually
and as Administrator for the
Estate of Bartow Dutton,

      Plaintiff,

        v.

UNITED STATES OF AMERICA,

      Defendant.

          CV 616-090

## O R D E R

Before the Court are Defendant's motion to exclude Plaintiff's expert testimony and motion for summary judgment. (Doc. 26.) Plaintiff sued Defendant under the Federal Tort Claims Act ("FTCA") alleging that Defendant committed medical malpractice resulting in her husband's death. Defendant argues that Plaintiff's expert testimony should be excluded under O.C.G.A. § 24-7-7(c)(2) and Federal Rule of Evidence 702 and that summary judgment is appropriate because Plaintiff cannot sustain a medical malpractice claim under Georgia law without expert testimony.

## I. BACKGROUND

On August 2, 2013, Bartow Dutton, Plaintiff's husband, arrived at the Statesboro Primary Care Telehealth Outreach Clinic (the "SPCTOC") for a laboratory appointment. While at

the SPCTOC, Mr. Dutton suffered from dizziness, heavy sweating, and vomiting when technicians drew his blood. The staff advised him that he may want to be evaluated at a local hospital emergency room, but Mr. Dutton refused and stated his desire to return home. The staff then advised Mr. Dutton to go to the ER if his blood pressure increased, he continued vomiting and feeling dizzy, fainted, or felt any chest pain, shortness of breath, or radiating pain.

On August 5, 2013, Mr. Dutton traveled to the Augusta VA Primary Care Clinic for an appointment with Dr. Kumud Smith. The only significant pain Mr. Dutton complained of during his visit was pain in the stump of his previously amputated right leg. Dr. Smith's examination demonstrated that Mr. Dutton had ongoing arterial ischemia. Dr. Smith referred Mr. Dutton to a vascular surgeon for an evaluation.

On August 6, 2013, Dr. Smith ordered a vascular surgery consult for Mr. Dutton. Dr. Smith requested the consult occur within one month. Dr. Manuel Ramirez, the Chief of Vascular Surgery Section at the Charlie Norwood VA Medical Center in Augusta, received the consult request on August 6, 2013. That same day, Dr. Ramirez determined that it would be appropriate to schedule an appointment within 4-6 weeks. He asked his assistant, Portland Frame, to schedule a consult for Mr. Dutton. Frame scheduled a consult for Mr. Dutton on September 17, 2013.

On August 19, 2013, two weeks after his visit to Dr. Smith, Mr. Dutton died of sepsis. On April 17, 2014, Plaintiff filed a claim for wrongful death with the Department of Veterans Affairs. On January 6, 2016, Defendant issued a Notice of Final Denial of Plaintiff's claim. On June 29, 2016, Plaintiff filed suit in this Court under the FTCA alleging malpractice on behalf of Defendant. Specifically, Plaintiff alleges that Defendant violated the standard of care when it failed to schedule Mr. Dutton for a consult within one month of the August 5, 2013 visit and that Defendant's violation of the standard of care was the proximate cause of Mr. Dutton's death.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four

3

Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 323. When the movant does not carry the burden of proof at trial, it may satisfy its initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp., 477 U.S. 317). The movant cannot meet its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Id.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presented evidence

4

affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave Plaintiff notice of the motion for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 27.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

5

## III. DISCUSSION

Defendant argues that Plaintiff has failed to prove her medical malpractice claim because she has not presented sufficient expert testimony to establish either the standard of care or proximate cause elements. "Liability in an FTCA action is determined in accordance with the law of the place where the government's act or omission occurred . . . ." Stevens v. Battelle Mem'l Inst., 488 F.3d 896, 899 n.3 (11th Cir. 2007) (citing Cole v. United States, 755 F.2d 873, 879 n.16 (11th Cir. 1985); and 28 U.S.C. § 1346(b)). As all relevant alleged acts and omissions occurred in Georgia, Georgia law controls Plaintiff's claims.

"To prove a medical malpractice claim in Georgia, a plaintiff must show: (1) the duty inherent in the health care provider-patient relationship; (2) breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure is the proximate cause of the injury sustained." Knight v. W. Paces Ferry Hosp., Inc., 585 S.E.2d 104, 105 (Ga. Ct. App. 2003) (citing Zwiren v. Thompson, 578 S.E.2d 862, 864 (Ga. 2003)). A plaintiff must present expert testimony to establish that the relevant medical professional breached the applicable standard of care and that this breach was the proximate cause of the relevant injury (i.e., the second and third aforementioned elements). See Porter v. Guill, 681 S.E.2d 230, 235 (Ga. Ct. App. 2009); see also Zwiren, 578 S.E.2d at 865 ("In order to establish proximate cause by a

6

preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson." (citations omitted)); Smith v. Luckett, 271 S.E.2d 891, 893 (Ga. Ct. App. 1980) ("The plaintiff's experts must demonstrate to the jury a deviation from the recognized and accepted standard of medical care prevalent in the general professional community for treating a patient with the signs and symptoms exhibited by the plaintiff." (citations omitted)).

Defendant argues that Plaintiff's first expert, Dr. Blake H. Moore, is not qualified to offer an expert opinion in the fields of general surgery and vascular surgery under O.C.G.A. § 24-7-702(c)(2) and should be excluded from testifying as an expert under Federal Rule of Evidence 702. "[I]n a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 601. The Eleventh Circuit has previously held that "Georgia's evidentiary rules for a physician's expert testimony [i.e., O.C.G.A. § 24-7-702] are so intimately intertwined with its malpractice laws that the rules must apply in an FTCA case for medical malpractice." See Dutton v. United States, 621 F. App'x 962, 966 (11th Cir. 2015). "[T]o qualify as an expert in a medical malpractice action in Georgia, the

7

witness must (1) have actual knowledge and experience in the relevant area through either active practice or teaching and (2) either be in the same profession as the defendant whose conduct is at issue or qualify for the exception to the same profession requirement." Id. at 967 (internal quotations and alterations omitted) (citing Hankla v. Postell, 749 S.E.2d 726, 729 (Ga. 2013)); see also O.C.G.A. § 24-7-702(c). O.C.G.A. § 24-7-702(c)(2) further requires that:

> in professional malpractice actions, the opinions of an expert . . . shall be admissible only if, at the time the act or omission is alleged to have occurred, such expert . . . had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in . . . [t]he active practice of such area of specialty of his or her profession for at least three of the last five years . . . or [t]he teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession . . .

Because Dr. Moore has not practiced as a general or vascular surgeon since 2008 or 2009 and is not employed as a "member of the faculty of an educational institution accredited in teaching" medicine, he is not qualified as an expert under O.C.G.A. § 24-7-702 and this Court may not consider his testimony. See O.C.G.A. § 24-7-702(c)(2); Fed. R. Evid. 601. Accordingly, the Court **GRANTS** Defendant's motion to exclude Dr. Moore's testimony.[1]

---

[1] Because Dr. Moore is not qualified to offer expert witness testimony under § 24-7-702, the Court does not reach Defendant's remaining arguments under Federal Rule of Evidence 702.

Defendant also argues that Plaintiff's other expert, Dr. Karl A. Illig, should be excluded from testifying as an expert under Federal Rule of Evidence 702. "The admission of expert evidence is governed by Federal Rule of Evidence 702." Rink v. Cheminova, 400 F.3d 1286, 1291 (11th Cir. 2005). Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 charges district courts to "act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." Rink, 400 F.3d at 1291 (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993)). Pursuant to this gatekeeping function,

> district courts must engage in a rigorous inquiry to determine whether: '(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'

Id. at 1291-92 (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." Id. at 1292 (citing Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999)).

The Court agrees with Defendant that Dr. Illig's testimony pertaining to the proximate cause of Mr. Dutton's death is unreliable. The "reliable" element requires that the testifying expert's opinion have "a reliable basis in the knowledge and experience of his discipline." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999) (citing Daubert, 509 U.S. at 592). Because the exact factors that will govern the reliability of an expert opinion will depend on the expert's discipline and the opinion offered, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Knight through Kerr v. Miami-Dade Cty., 856 F.3d 795, 808 (citing Kumho Tire Co., 526 U.S. at 152; Frazier, 387 F.3d at 1262); see also Rink, 400 F.3d at 1292 ("District courts have substantial discretion in deciding how to test an expert's reliability." (internal quotations, citations, and alterations omitted)). Regardless of the specific factors considered, however, "[p]roposed testimony must be supported by appropriate validation - i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590; see also Heller v. Shaw Indus., Inc.,

10

167 F.3d 146, 155 (3d Cir. 1999) ("[N]ot only must each stage of the expert's testimony be reliable, but each stage must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules."). A reliability determination cannot rest solely on an expert's qualifications or his unexplained assurance that his opinions rely on accepted principles. See McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1244 (11th Cir. 2005); Frazier, 387 F.3d at 1261; see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., 402 F.3d 1092, 1113 (11th Cir. 2005) ("Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough."); Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1342 (11th Cir. 2003) ("[O]ne may be considered an expert but still offer unreliable testimony." (citations omitted)). Courts must be careful, however, to focus on the expert's principles and methodology rather than the conclusions that they generate. See Daubert, 509 U.S. at 595.

The Court finds that neither Dr. Illig's initial report nor his subsequent addendum contain the necessary "factual or analytical support" to form a reliable opinion as to whether Defendant's alleged negligence was the proximate cause of Mr. Dutton's death. See Cook, 402 F.3d at 1113. Dr. Illig's initial report conclusorily stated that "the death of Mr. Bartow C. Dutton was proximately caused by the negligence of the VAMC." (Doc. 17,

11

at 2.)   Dr. Illig provided no explanation as to how or why he arrived at this conclusion.   Dr. Illig's addendum makes a similarly conclusory assertion that "[t]he failure of the VAMC to see and treat Mr. Dutton, within one month of August 5, 2013, was the direct and proximate cause of his death from sepsis from his ongoing arterial ischemia and that should have been attended to by the VAMC promptly."   (Doc. 29-1, at 4-5.)   Once again, Dr. Illig provided no explanation as to how or why he arrived at this conclusion.   Dr. Illig's opinion is thus a "conclusory statement[] devoid of factual or analytical support," see Cook, 402 F.3d at 1113, and the Court **GRANTS** Defendant's motion to exclude Dr. Illig's testimony as it relates to the proximate cause of Mr. Dutton's death.[2]

Upon the exclusion of Plaintiff's two experts, Plaintiff lacks any expert testimony supporting the proximate cause element of her claims.   Because Georgia law requires expert testimony to prove the proximate cause element of a medical

---

[2] Because the Court may exclude Dr. Illig's testimony on the grounds of unreliability alone, the Court need not address Defendant's argument that Dr. Illig's testimony would not help the trier of fact. Nevertheless, were the Court to address this issue, it would find that Dr. Illig's testimony on the issue of probable cause is not helpful. Dr. Illig opines that Defendant's failure to schedule a consult within one month of his August 5 exam was the proximate cause of Mr. Dutton's death.   But Mr. Dutton died within two weeks of his August 5 exam. Thus, even if the Court were to accept Dr. Illig's assertion that the standard of care required Defendant to schedule a consult with a vascular surgeon within one month, Dr. Illig's testimony would provide no help in ascertaining how the failure to schedule that consult within one month was the proximate cause of Mr. Dutton's death.

malpractice claim, Plaintiff cannot prove all the elements of her instant claims. Accordingly, the Court finds that summary judgment in favor of Defendant is appropriate.

## IV. CONCLUSION

The Court **GRANTS** Defendant's motion to exclude expert testimony. (Doc. 26.) The Court excludes Dr. Moore's testimony in its entirety because he is not a qualified expert under O.C.G.A. § 24-7-702(c)(2), and it excludes Dr. Illig's testimony as it relates to proximate cause because Dr. Illig failed to offer any "factual or analytical support" for his conclusion as required by Federal Rule of Evidence 702. Plaintiff, therefore, has no expert testimony establishing that Defendant's negligence was the proximate cause of Mr. Dutton's death. Because expert testimony of proximate cause is required in this action, the Court **GRANTS** Defendant's motion for summary judgment. (Doc. 26.) The Court **DIRECTS** the Clerk to **CLOSE** this case and **ENTER JUDGMENT** in favor of Defendant and against Plaintiff.

**ORDER ENTERED** at Augusta, Georgia, this 6th day of September, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA